**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF NEW YORK**
--------------------------------------------------------X
LEO SMITH, JR., BENJAMIN CANNON, JR.,
and JOHN CHRISTOPHER SMITH,

                    Plaintiffs,

          -against-

TOWN OF HEMPSTEAD DEPARTMENT OF
SANITATION SANITARY DISTRICT NO. 2,
BOARD OF COMMISSIONERS in their official
and individual capacities, ROBERT NOBLE in
his individual and official capacity, MICHAEL
MCDERMOTT in his individual and official
capacity, NICHOLAS DINICCIO in his
individual and official capacity and JOHN
BEYER in his individual and official capacity,

                    Defendants.

--------------------------------------------------------X

**MEMORANDUM OF
DECISION AND ORDER**
08-cv-3546 (ADS)(WDW)

**APPEARANCES:**

**Law Offices of Frederick K. Brewington, Esq.**
*Attorneys for the plaintiffs*
556 Peninsula Boulevard
Hempstead, NY 11550
        By:    Frederick K. Brewington, Esq.,
                 Gregory Calliste, Jr., Esq., of Counsel

**Law Offices of Gregory S. Lisi, P.C.**
*Attorneys for all defendants except John Beyer*
55 Front Street, Suite 7
Rockville Center, NY 11570
        By:    Gregory Scot Lisi, Esq., of Counsel

**Gabor & Gabor, Esqs.**
*Attorneys for the defendant John Beyer*
400 Garden City Plaza
Suite 406
Garden City, NY 11530
        By:    David George Gabor, Esq.,
                 Hope Senzer Gabor, Esq., of Counsel

**SPATT, District Judge.**

In this civil rights case, the plaintiffs allege that the defendants created a hostile work environment in the plaintiffs' workplace, and then retaliated against the plaintiffs for formally complaining about the presence of the hostile work environment. All of the defendants have now moved for summary judgment dismissing all of the plaintiffs' causes of action. For the reasons that follow, the Court grants the defendant John Beyer's motion for summary judgment in full, and grants in part and denies in part the remaining defendants' motions for summary judgment.

## I. BACKGROUND

This case, like another case pending before the Court, Alexandre v. Town of Hempstead, No. 09-cv-1269, --- F. Supp. 2d ----, 2011 WL 2181461 (E.D.N.Y. Jun. 4, 2011), stems from the April 19, 2007 hanging of a noose in the employee area of the Town of Hempstead Department of Sanitation Sanitary District No. 2 (the "Sanitary District"). Each of the three plaintiffs, Leo Smith, Jr., Benjamin G. Cannon, Jr., and John Christopher Smith, was an employee of the Sanitary District as of April 19, 2007, and remains employed there today. All three are African-American. The plaintiffs name as defendants in this case the Sanitary District; its Board of Commissioners; Robert Noble, secretary to the Board of Commissioners; Michael McDermott, the general manager for the Sanitary District; Nicholas Dionisio (identified incorrectly as Nicholas Diniccio in the plaintiffs' complaint), a mid-level supervisor at the Sanitary District; and John Beyer, a co-worker of the plaintiffs at the Sanitary District.

The following facts in this case are generally not disputed:

On Thursday, April 19, 2007 at about 6:00 a.m., the plaintiffs Leo Smith and John Smith arrived for work at the central garage for the Sanitary District.  When they entered the garage, they found a rope tied into a noose hanging on the wall in an area where workers regularly gathered.  A number of other Sanitary District employees, both white and black, also witnessed the noose.  The third named plaintiff, Benjamin Cannon, did not see the noose himself, but heard about the event shortly thereafter.  Also, at some time before or after the plaintiffs arrived, the defendant Nicholas Dionisio, a Caucasian mid-level supervisor, saw the noose, but neither reported it nor removed it.

Seeing the noose and feeling offended, the plaintiff John Smith removed it from the wall, and brought it to a mid-level manager named John Pugliese, Sr.  In turn, Pugliese brought the noose to the defendant Michael McDermott, his superior at the Sanitary District.  McDermott stored the noose under his desk, and proceeded to call a meeting of all personnel at the Sanitary District before they left the garage that morning on their garbage collection routes.  At that meeting, McDermott told the workers, in substance, that the hanging of the noose might have been acceptable or funny ten years ago, but that it was not acceptable today.  McDermott offered an opportunity for anyone to comment on the subject of the noose—an opportunity that was apparently declined—and he then dismissed the workers from the meeting.  McDermott then contacted a number of other individuals, including the Defendant Robert Noble, to discuss the incident, and commenced an investigation into the morning's events.  The Sanitary District workers, including the plaintiffs, completed their normal duties that day, although the plaintiffs state that they were very upset by both the noose and McDermott's comments.

The following Monday, which was April 23, 2007, the defendant John Beyer came to meet with McDermott about 11:00 a.m.  Beyer told McDermott that he had hung the noose in the work area, and that he had done so not to express racial animus, but rather as part of a joke with a co-worker about how the benefits that the Sanitary District workers received were insufficient.  Significantly, Beyer also told McDermott, either at this meeting or at a subsequent meeting, that he had hung up the noose for only three to four minutes and then had taken it down, and that he believed that no African-American workers had seen the noose while he had it hung.

On Tuesday, April 24, McDermott permitted Beyer to address all of the sanitation workers at a general meeting, at which time Beyer apologized to the group for his part in the hanging of the noose.  He also later apologized to each of the plaintiffs individually.  For his actions concerning the noose, Beyer received a verbal reprimand, and was told that he would have a written reprimand placed in his file indicating that any subsequent similar event would result in his termination.  Whether the written reprimand was actually issued is in some dispute.

According to Beyer, he had found the noose in the rear of a garbage truck, and had thrown it back in a truck after hanging it on the wall.  However, in spite of the fact that Beyer's statement may have lead to the impression that someone else had re-hung the noose after Beyer removed it, it is not clear that substantial further investigation of the event took place.  Thus, on May 3, 2007, the plaintiffs wrote a letter to the defendant Robert Noble, the secretary to the Board of Commissioners, stating their disappointment with the Sanitary District's response to the incident.  Based on the plaintiffs' letter, Noble took over the

investigation of the incident from McDermott, and also reprimanded McDermott for his statement that hanging a noose might have been acceptable ten years ago.

Noble's subsequent investigation into the incident lasted approximately another two months. However, few additional individuals in addition to the plaintiffs and the managers involved were interviewed. As for the noose itself, McDermott had discarded it before any additional examination could be performed on it. Ultimately, no additional punishment was rendered to John Beyer, and no other individuals were implicated in the hanging of the noose. No further meetings of the Sanitary District workers were held concerning the incident, and no additional training was provided to the personnel.

On June 22, 2007, July 11, 2007, and July 13, 2007, Leo Smith, Benjamin Cannon, and John Smith each respectively filed a complaint with the New York State Division of Human Rights and the Equal Employment Opportunity Commission ("EEOC") concerning the hanging of the noose and the response by the Sanitary District. Each of the three stated, in their own language, that the hanging of the noose was offensive, and that they felt that their employer had inadequately addressed the event. The EEOC ultimately issued Notices of Right to Sue regarding each of these three complaints.

Based on these basic facts, the plaintiffs ultimately asserted various federal and state causes of action against the defendants, alleging that the defendants had created a hostile work environment. In addition, the plaintiffs asserted retaliation claims against the defendants, based on a further set of facts:

First, the plaintiff Leo Smith alleges that the defendants retaliated against him approximately three and a half months after he filed his EEOC complaint by wrongfully suspending him from driving a garbage truck for two weeks. However, he was given full pay

during the suspension. Leo Smith allegedly received this suspension for missing a mandatory safety meeting. During his two-week suspension he did not drive a garbage truck, but rather worked on the back of the truck, helping to load garbage at each residential stop. Leo Smith does not deny that it may be his employer's nominal policy to suspend drivers who miss safety meetings, but asserts that this policy was generally not enforced, and that it was enforced against him only because of his EEOC complaint.

Next, the plaintiff John Smith states that the defendants retaliated against him on June 24, 2008, approximately eleven months following his EEOC complaint. On that date, John Smith was suspended without pay by the defendant Nicholas Dioniso following an incident at 417 Woodland Road, South Hempstead, New York. The parties agree that on that morning, John Smith was working on a garbage truck that picked up garbage at 417 Woodland Road. Shortly after John Smith's garbage truck collected garbage from that address, the owner of the property called John Smith's supervisor, Nicholas Dioniso, to complain that John Smith had not returned his garbage cans to the side of his driveway, as he was supposed to do. Dioniso drove to 417 Woodland Road, and called John Smith's truck back there, as well. When John Smith returned to the residence, the resident's garbage cans were in the middle of the home's driveway, as was the owner of the home. Dioniso twice directed John Smith to move the garbage cans to the side of the driveway, and John Smith twice refused to do so. John Smith stated that he had properly placed the garbage cans at the side of the driveway when he earlier collected garbage at that address—a contention that was later corroborated by the other two individuals working on John Smith's garbage truck. Dioniso then suspended John Smith without pay for insubordination.

Finally, the plaintiff Benjamin Cannon asserts that his retaliation occurred on or about August 12, 2008, approximately thirteen months after he filed his EEOC complaint. By way of background, Cannon had lost his commercial driver's license sometime in May 2007, after being convicted of speeding and driving while intoxicated. Sanitary District drivers are required to hold a commercial driver's license to drive a garbage truck, and as a result of losing his license, Cannon was assigned to work on the back of a garbage truck rather than to drive a truck. However, in August of 2008, Cannon's license was reinstated, and he therefore applied to be restored as a garbage truck driver. The Sanitary District initially indicated that it would consider this request, but on August 11, 2008, the insurance broker for the Sanitary District issued a letter recommending that Cannon not be permitted to drive for another two years. The Sanitary District accepted this recommendation, and denied Cannon's request for reinstatement. However, the Sanitary District did elect to pay Cannon the salary received by sanitation drivers.

On August 28, 2008, following all of these events, the plaintiffs commenced the present action. After amending their complaint by right on December 12, 2008, the plaintiffs asserted causes of action against the Sanitary District and its Board of Commissioners for: (1) hostile work environment and retaliation in violation of Title VII, 42 U.S.C. § 2000e; (2) hostile work environment and retaliation in violation of the Fourteenth and First Amendments of the United States Constitution, pursuant to 42 U.S.C. § 1983; and (3) Monell liability with regard to the municipal defendant pursuant to 42 U.S.C. § 1983. Against all of the defendants, the plaintiffs assert causes of action for (1) hostile work environment in violation of 42 U.S.C. § 1981; (2) conspiracy to create a hostile work environment and to

retaliate, pursuant to 42 U.S.C. § 1985; and (3) hostile work environment and retaliation, in violation of New York State's Human Rights Law, New York State Executive Law § 296.

As an aside, the Court notes that the complaint is unclear as to whether the plaintiffs intend to interpose separate claims against the Town of Hempstead. To the extent that the plaintiffs seek to do so, those claims are treated as duplicative of their claims against the Sanitary District, which is a department of the town. Similarly, the plaintiffs' claims against the members of the Board of Commissioners in their official capacities are treated as identical to the plaintiffs' claims against the Sanitary District. See, e.g., Tsotesi v. Bd. of Educ., 258 F. Supp. 2d 336, 338 n. 10 (S.D.N.Y. 2003). Further, the complaint does not appear to assert any Section 1983 claims against any of the defendants in their individual capacities, and the Court therefore treats the complaint as not doing so. However, to the extent that the complaint does assert such causes of action, they would be analyzed in the same manner that the Court has analyzed the plaintiffs' various Section 1981 causes of action.

On December 23, 2010, the defendant John Beyer, who is represented separately from the remainder of the defendants, filed a motion for summary judgment dismissing all of the plaintiffs' claims against him. On December 24, 2010, the remaining defendants also moved collectively for summary judgment dismissing all of the plaintiffs' claims. Both motions are opposed.

## II. DISCUSSION

### A. Legal Standard on a Motion for Summary Judgment

It is well-settled that summary judgment under Fed. R. Civ. P. 56(c) is proper only "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with

the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c). A fact is "material" within the meaning of Fed. R. Civ. P. 56 when its resolution "might affect the outcome of the suit under the governing law." Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248, 106 S. Ct. 2505, 91 L. Ed. 2d 202 (1986). An issue is "genuine" when "the evidence is such that a reasonable jury could return a verdict for the nonmoving party." Id. In determining whether an issue is genuine, "[t]he inferences to be drawn from the underlying affidavits, exhibits, interrogatory answers, and depositions must be viewed in the light most favorable to the party opposing the motion." Cronin v. Aetna Life Ins. Co., 46 F.3d 196, 202 (2d Cir.1995) (citing United States v. Diebold, Inc., 369 U.S. 654, 655, 82 S. Ct. 993, 8 L. Ed. 2d 176 (1962) (per curiam), and Ramseur v. Chase Manhattan Bank, 865 F.2d 460, 465 (2d Cir. 1989)).

Once the moving party has met its burden, "the nonmoving party must come forward with 'specific facts showing that there is a genuine issue for trial.'" Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 587, 106 S. Ct. 1348, 89 L. Ed. 2d 538 (1986) (quoting Fed. R. Civ. P. 56(e)). However, the nonmoving party cannot survive summary judgment by casting mere "metaphysical doubt" upon the evidence produced by the moving party. Matsushita, 475 U.S. at 586. Summary judgment is appropriate when the moving party can show that "little or no evidence may be found in support of the nonmoving party's case." Gallo v. Prudential Residential Servs., 22 F.3d 1219, 1223–24 (2d Cir. 1994) (citations omitted).

**B. As to the Plaintiffs' Hostile Work Environment Claims**

All of the plaintiffs' causes of action rely in part on allegations that the defendants injured the plaintiffs by causing or perpetuating a hostile work environment at the Sanitary District. The Court therefore begins by addressing the hostile work environment element of the plaintiffs' claims.

### 1. The Presence of a Hostile Work Environment

The standard for showing a hostile work environment under Title VII, Section 1981, Section 1983, and the New York State Human Rights Law is essentially the same. See Schiano v. Quality Payroll Systems, Inc., 445 F.3d 597, 609 (2d Cir. 2006); Patterson v. County of Oneida, N.Y., 375 F.3d 206, 225 (2d Cir. 2004). In general, to prevail on a hostile work environment claim, a plaintiff must show that "the workplace is permeated with discriminatory intimidation, ridicule, and insult, that is sufficiently severe or pervasive to alter the conditions of the victim's employment." Cruz v. Coach Stores, Inc., 202 F.3d 560, 570 (2d Cir. 2000) (internal quotations omitted). In addition, to succeed on a Title VII or New York State Human Rights Law hostile work environment claim *against an employer*, the plaintiff must show that "a specific basis exists for imputing the conduct that created the hostile environment to the employer". Petrosino v. Bell Atlantic, 385 F.3d 210, 221 (2d Cir. 2004) (internal quotations omitted). Similarly, to prevail on a Section 1981 or 1983 hostile work environment claim *against a municipal employer*, a plaintiff must show that the harassment derived from a municipal policy or practice. Patterson, 375 F.3d at 226. While single incidents of harassment generally do not create a hostile work environment, a plaintiff may nevertheless avoid summary judgment in a case involving a single instance of harassment by showing that it was "extraordinarily severe." Whidbee v. Garzarelli Food

Specialties, Inc., 223 F.3d 62, 69 (2d Cir. 2000) (quoting Cruz v. Coach Stores, Inc., 202 F.3d 560, 570 (2d Cir. 2000)).

Here, the plaintiffs have presented very little evidence of harassment beyond the events of April 19, 2007. There is some limited testimony from the plaintiffs and other witnesses that the word "nigger" was used by employees at the Sanitary District, but most of that testimony centers around an employee named Robert Hachmeister, who was suspended for this conduct. Otherwise, the plaintiffs attempt to show pervasive harassment by pointing to allegations of discrimination made by other African American sanitation employees in EEOC complaints and in a federal lawsuit. However, none of those complaints have been sworn to, and the plaintiffs have otherwise provided no evidence supporting these allegations. Thus, the EEOC complaints and the federal complaint remain merely allegations, and have no evidentiary weight in this case. See Fletcher v. Atex, Inc., 68 F.3d 1451, 1456 (2d Cir. 1995) ("mere conclusory allegations . . . are not evidence and cannot by themselves create a genuine issue of material fact").

Nevertheless, the Court finds that, taking all of the evidence in the best light for the plaintiffs, there is a triable issue of fact as to whether a hostile work environment existed at the Sanitary District. While not all courts have agreed that the display of a single noose in a workplace is sufficiently severe to affect the working conditions of African American employees, there is little doubt that "the noose is among the most repugnant of all racist symbols, because it is itself an instrument of violence." Williams v. New York City Housing Authority, 154 F. Supp. 2d 820, 824 (S.D.N.Y. 2001) (holding that the display of a noose in a supervisor's office for three days created a hostile work environment). Thus, courts have found that even limited display of a noose can quickly precipitate a hostile work

environment.  See, e.g., Vance v. S. Bell Tel. & Tel. Co., 863 F.2d 1503, 1511 (11th Cir.

1989), abrogated on other grounds by Harris v. Forklift Sys., Inc., 510 U.S. 17, 21, 114 S. Ct.

367, 126 L. Ed. 2d 295 (1993) (finding that the hanging of a noose twice in the plaintiff's

work station created a triable issue of fact concerning harassment);  Brown v. Orange &

Rockland Utilities, Inc., 594 F. Supp. 2d 382, 392–93 (S.D.N.Y. 2009) ("this Court finds that

[the plaintiff's] allegations that two nooses were put up and targeted at him are sufficient to

defeat a motion for summary judgment on a hostile work environment claim"); Wilson v.

New York City Dep't of Transp., No. 01-cv-7398, 2005 WL 2385866, at *21–22 (S.D.N.Y.

Sept. 28, 2005) (denying summary judgment on a hostile work environment claim based on

the repeated use of offensive nicknames coupled with the display of a noose); but see

Faulkner v. Niagara Mohawk Power Corp., No. 05-cv-0974, 2006 WL 3207815, *6

(N.D.N.Y. Nov. 3, 2006) (finding that the isolated display of a noose, aimed at a white

employee, did not create a hostile work environment); McCoy v. City of New York, 131 F.

Supp. 2d 363, 374 (E.D.N.Y. 2001) (finding that the isolated display of a noose and an

offensive drawing did not create a hostile work environment).

Here, while African American employees viewed the noose for only a limited period

of time, the Court finds that the public nature of the display, in the central garage, an area

where all African American employees would pass that morning, suggests that a reasonable

jury could conclude that it was intended as a legitimate threat.  In addition, Michael

McDermott's comment that the display of a noose might have been appropriate ten years ago

could be viewed by a jury as a further indication to employees that the Sanitary District

would do little to prevent future, and perhaps more aggressive, racist acts.  Further, while the

evidence presented by the plaintiffs of other racist acts before and after the noose incident is

thin, there is at least some evidence that the display of the noose occurred in the context of a racially-charged atmosphere. (See, e.g., Noble Depo., 151:19–153:4 (acknowledging that, while the plaintiffs' allegation of racist remarks was "an aside", the plaintiffs did state that they heard racial jokes and epithets from time to time); Cannon Depo. 92:11–15 ("The job is sectioned off. The black guys sit over there. The white guys over there. They separate us. Everybody talks to each other. They don't really get along.").) The Court therefore finds that there are genuine issues of material fact as to whether a hostile work environment existed for the plaintiffs.

## 2. Employer Liability for the Hostile Work Environment

The Court's finding that there are issues of fact as to the existence of a hostile work environment is only the first step in determining if there may be liability for any of the defendants. The Court now addresses, first, whether the hostile work environment may be imputed to the plaintiffs' employer.

To prevail at trial against the Sanitary District on their hostile work environment claims pursuant to Title VII or the New York State Human Rights Law, the plaintiffs must not only show that there was a hostile work environment, but also that there is reason to impute the existence of the hostile work environment to the Sanitary District. Petrosino, 385 F.3d at 221. Here, the plaintiffs initially assert that, because management-level employees of the Sanitary District were involved in creating the hostile work environment, liability for the hostile work environment is automatically imputed to the Sanitary District. See, e.g., Leopold v. Baccarat, 239 F.3d 243, 245 (2d Cir. 2001). In the Court's view, this overstates the plaintiff's case, as the managers' role in perpetuating the actually harassing conduct was minimal. Nevertheless, the Court need not definitively resolve this issue, as the Court finds

that there are triable issues of fact regarding the sufficiency of the Sanitary District's efforts to remediate the effect of the hanging of the noose, and that this may form a basis for employer liability under Title VII and the New York State Human Rights Law.

In general, an employer will be liable for a hostile work environment in the workplace when the employer knows of the hostile work environment but fails to take appropriate remedial steps. See Duch v. Jakubek, 588 F.3d 757, 763 (2d Cir. 2009) ("Despite offering a reasonable avenue of complaint to plaintiff, employer defendants can still be held liable if plaintiff can show that they 'knew, or in the exercise of reasonable care should have known, about the harassment yet failed to take appropriate remedial action.'" (quoting Howley v. Town of Stratford, 217 F.3d 141, 154 (2d Cir. 2000))). The Court analyzes whether an employer's remedial actions were sufficient based on the totality of the circumstances. Id. (citing Distasio v. Perkin Elmer Corp., 157 F.3d 55, 63 (2d Cir. 1998)). In the context of summary judgment, "[i]f the evidence creates an issue of fact as to whether an employer's action is effectively remedial and prompt, summary judgment is inappropriate." Gallagher v. Delaney, 139 F.3d 338, 348 (2d Cir. 1998), abrogated on other grounds by Burlington Indus., Inc. v. Ellerth, 524 U.S. 742, 118 S. Ct. 2257, 141 L. Ed. 2d 633 (1998).

Here, the Court finds that there are issues of fact as to whether the Sanitary District's response to the noose incident was "effectively remedial and prompt". Id. The critical antecedent to this finding is that there is *no* evidence—and none of the parties even appear to seriously allege—that the defendant John Beyer was responsible for the plaintiffs' viewing of the noose. The only evidence of John Beyer's involvement with the noose incident is his own statement, in which he admits only to hanging the noose for three to four minutes, while

no African American employees were in the workplace. The obvious implication from this evidence is that someone else re-hung the noose after Beyer took it down, and there is additional evidence that the managers of the Sanitary District accepted Beyer's story. (See, e.g., Noble Depo. at 14:16–21 ("I was at that time under the impression that John Beyer had put this up and taken it down. There was certainly some indication somebody might have put it back up, but we had no hard evidence.").) However, in spite of this, there is evidence that suggests that the Sanitary District managers failed to conduct a meaningful further investigation to determine who else, if anyone, was involved in the incident. As such, there are triable issues of fact as to the adequacy of the Sanitary District's response to the hanging of the noose, and summary judgment is thus not appropriate on this issue.

For substantially similar reasons, the Court finds that there are triable issues of fact with regard to the plaintiffs' Section 1981 and 1983 harassment claims against the Sanitary District. To succeed on either of these claims, the plaintiffs must show that, pursuant to the well-settled law of <u>Monell v. Department of Social Services</u>, 436 U.S. 658, 692-94, 98 S. Ct. 2018, 56 L. Ed. 2d 611 (1978) and its progeny, "the challenged acts were performed pursuant to a municipal policy or custom". <u>Patterson</u>, 375 F.3d at 226. Here, the individuals who conducted the investigation into the hanging of the noose were policy makers for the Sanitary District. Thus, the evidence that their investigation may have been insufficient raises a triable issue of fact as to whether their failure to conduct an adequate investigation could be attributed to the Sanitary District as municipal policy. <u>See, e.g.,</u> <u>Rookard v. Health and Hospitals Corp.</u>, 710 F.2d 41, 45 (2d Cir. 1983) ("Where an official has final authority over significant matters involving the exercise of discretion, the choices he makes represent

government policy."). Therefore, summary judgment on the Section 1981 and 1983 hostile work environment claims against the Sanitary District is not appropriate.

Finally, the same considerations lead the Court to find that the Sanitary District's invocation of the <u>Faragher</u>/<u>Ellerth</u> defense does not provide a basis for summary judgment. The <u>Faragher</u>/<u>Ellerth</u> defense, named after two companion Supreme Court cases, "consists of two elements: that (1) the employer exercised reasonable care to prevent and correct promptly any discriminatory harassing behavior, and (2) the plaintiff employee unreasonably failed to take advantage of any preventive or corrective opportunities provided by the employer or to avoid harm otherwise." <u>Gorzynski v. Jetblue Airways Corp.</u>, 596 F.3d 93, 103 (2d Cir. 2010) (internal quotations and alterations omitted). As the Court has already found that there are triable issues of fact with regard to the appropriateness of the Sanitary District's response to the noose incident, this defense—while still available at trial—does not preclude summary judgment.

The Court therefore denies the defendants' motion for summary judgment dismissing the plaintiff's hostile work environment claims against the Sanitary District based on Title VII, the New York Human Rights Law, Section 1981, and Section 1983.

### 3. Individual Liability for the Hostile Work Environment

The plaintiffs have also asserted individual liability against the defendants for a hostile work environment, pursuant to Section 1981 and the New York State Human Rights law. In general, to prove individual liability based on either of these causes of action, a plaintiff most show that the individual was personally involved in the alleged violations of rights. <u>Patterson</u>, 375 F.3d at 229 (regarding Section 1981); <u>Stevens v. New York</u>, 691 F. Supp. 2d 392, 400–01 (S.D.N.Y. 2009) (regarding the New York Human Rights Law).

Personal involvement for managers in this context can include "failure to take action upon receiving information that constitutional violations are occurring." Patterson, 375 F.3d at 229.

First, with regard to the defendant John Beyer, the Court finds that there are no triable issues of fact regarding his personal liability for the alleged hostile work environment. As noted above, the *only* evidence on record concerning Beyer's involvement with the noose is his own confession, in which he denies showing the noose to *any* African American individuals. Further, there is no evidence that Beyer ever made any racist remarks in the workplace or took any other racially offensive acts. To the contrary, Beyer apologized to all of the employees for his role in the incident, and apologized individually to each of the plaintiffs. As there is *no* evidence that any African American employee saw the noose as a result of Beyer hanging it, there is no basis for finding that Beyer's actions resulted in "discriminatory intimidation, ridicule, and insult, that is sufficiently severe or pervasive to alter the conditions of the victim's employment." Cruz v. Coach Stores, Inc., 202 F.3d 560, 570 (2d Cir. 2000) (internal quotations omitted). As such, the Court finds that Beyer cannot be found liable for creating a hostile work environment at the Sanitary District. The Court therefore grants the defendant Beyer's motion to dismiss the plaintiff's hostile work environment claims against Beyer based on the New York Human Rights Law and Section 1981. The only other claim that the plaintiffs assert against Beyer is for violation of 42 U.S.C. § 1985, which, as discussed below, is dismissed as against all defendants. The defendant John Beyer is therefore dismissed from this case.

Second, with regard to the members of the Board of Commissioners of the Sanitary District, the plaintiffs have adduced no evidence of personal involvement in the alleged

incidents by any of those individuals, none of whom is even individually identified in the plaintiffs' complaint. Therefore, the plaintiffs' individual claims for hostile work environment against the members of the Board of Commissioners are dismissed.

As for Robert Noble and Michael McDermott, the Court finds that there are triable issues of fact as to their individual liability based on the plaintiffs' hostile work environment claims under Section 1981 and the New York State Human Rights Law. As noted above, there is evidence suggesting that both Noble's and McDermott's response to the noose incident was inadequate, and the Court finds that this provides a sufficient basis for denial of summary judgment here.

Nevertheless, Noble and McDermott assert that they are entitled to summary judgment based on their qualified immunity from liability for their involvement in the relevant events. However, the Court similarly finds that there are triable issues of fact as to whether McDermott and Noble "objectively and reasonably believed that [they were] acting lawfully" in responding to the hanging of the noose, and whether they violated a clearly established right of the plaintiffs. Back v. Hastings on Hudson Union Free School Dist., 365 F.3d 107, 129 (2d Cir. 2004). McDermott and Noble are therefore also not entitled to a grant of summary judgment based on their qualified immunity from suit.

Finally, the plaintiffs have also named Nicholas Dionisio, a manager ranked below McDermott but above the plaintiffs, as an individual with liability for the hostile work environment. In this regard, the plaintiffs primarily point to a single piece of undisputed evidence allegedly showing Dionisio's personal involvement in the hostile work environment. Namely, on the morning of April 19, 2007, Dionisio walked within a few feet of the hanging noose, saw it, and failed to report it to anyone or to take any remedial action.

Dionisio admits that he saw the noose, but states that he thought only that it would be a good rope to use on his boat, and did not consider its racial implications.

At the summary judgment stage, the Court may not make determinations of credibility. See, e.g., Kaytor v. Electric Boat Corp., 609 F.3d 537, 645 (2d Cir. 2010) ("In reviewing the evidence and the inferences that may reasonably be drawn, the court may not make credibility determinations or weigh the evidence." (internal quotations and emphasis omitted)). Given this rule and the prominence of the noose as a cultural symbol, the Court finds that there is a genuine issue of fact present as to whether Dionisio recognized the rope as a noose, or whether a fact finder should accept his explanation that he only considered the rope's nautical uses. If Dionisio did in fact recognize the rope as a noose, there is a triable issue of fact as to whether, as a manager, he is liable for the alleged hostile work environment through his failure to take any remedial action. Summary judgment on the plaintiffs' hostile work environment claims against Dionisio is therefore not appropriate. Similarly, the Court cannot conclude as a matter of law that Dionisio is entitled to qualified immunity, as it is not obvious that he objectively and reasonably believed that he was following the law, or that the did not violate a clearly established right. Back, 365 F.3d at 129. The defendants' motion for summary judgment dismissing the plaintiff's hostile work environment claims against Nicholas Dionisio in his individual capacity is therefore denied.

## C. As to the Plaintiffs' Retaliation Claims Against All of the Defendants

In addition to their hostile work environment claims, the plaintiffs assert claims against all of the defendants except John Beyer for retaliation in violation of Title VII, Section 1981, Section 1983, and the New York State Human Rights Law. The Court now addresses that portion of the plaintiffs' claims.

As with the plaintiffs' hostile work environment claims, a single standard applies in analyzing the plaintiffs' retaliation claims under Title VII, Section 1981, Section 1983, and the New York State Human Rights Law. See, e.g., Carmody v. Village of Rockville Centre, 661 F. Supp. 2d 299, 324 (E.D.N.Y. 2009) (collecting Second Circuit cases). The applicable standard in this regard is the familiar burden shifting test established in McDonnell Douglas Corp. v. Green, 411 U.S. 792, 802–05, 93 S. Ct. 1817, 36 L. Ed. 2d 668 (1973). In summary form, the McDonnell Douglas test requires that, *first*, the plaintiff establish a prima facie case of retaliation, which could be shown by mere temporal proximity between the protected conduct and the alleged retaliatory action. El Sayed v. Hilton Hotels Corp., 627 F.3d 931, 932–33 (2d Cir. 2010) (describing the McDonnell Douglas burden shifting test in the context of a retaliation claim). To establish a prima facie case of retaliation, the plaintiff must:

> adduce evidence sufficient to permit a rational trier of fact to find (1) that he engaged in protected [activity] under [the anti-discrimination statutes], (2) that the employer was aware of this activity, (3) that the employer took adverse action against the plaintiff, and (4) that a causal connection exists between the protected activity and the adverse action, i.e., that a retaliatory motive played a part in the adverse employment action.

Kessler v. Westchester County Dep't of Soc. Servs., 461 F.3d 199, 205–06 (2d Cir. 2006).

*Then*, if the plaintiff establishes a prima facie case of retaliation, the burden shifts to the defendant to produce a non-retaliatory reason for the allegedly adverse action. Id. *Finally*, if the defendant satisfies this burden of production, the plaintiff again has the burden of showing, through more than mere temporal proximity, that "more likely than not the employer's decision was motivated, at least in part, by an intent to retaliate against him." Id. at 933 ("The temporal proximity of events may give rise to an inference of retaliation for the purposes of establishing a prima facie case of retaliation under Title VII, but without more,

such temporal proximity is insufficient to satisfy appellant's burden to bring forward some evidence of pretext.").

With regard to the establishment of a prima facie case through temporal proximity, the Second Circuit has not drawn a bright line as to how closely an adverse employment action must follow protected activity to imply that retaliation has taken place. See, e.g., Espinal v. Goord, 558 F.3d 119, 129 (2d Cir. 2009) (citing Gorman-Bakos v. Cornell Coop. Extension, 252 F.3d 545, 554 (2d Cir. 2001)). While some courts within this Circuit have held that a three month gap is insufficient to show a causal connection, others have found that a separation of as much as eight months will permit an inference of causation. Id. (citing Hollander v. American Cyanamid Co., 895 F.2d 80, 85–86 (2d Cir. 1990) and Grant v. Bethlehem Steel Corp., 622 F.2d 43, 45–46 (2d Cir. 1980)).

The Second Circuit has avoided definitively resolving this issue to permit courts "to exercise [their] judgment about the permissible inferences that can be drawn from temporal proximity in the context of particular cases." Id. Thus, in Espinal, the protected activity was a lawsuit against prison guards, and the adverse action which followed five months after the lawsuit was a beating by prison guards. In spite of the lengthy gap between the events, the court found that the plaintiff had sufficiently alleged a causal connection between the lawsuit and the beating. It held that it was plausible that the officers had waited until the plaintiff was involved in a fight with another inmate to "exact their retaliation". Id. By contrast, the Second Circuit held in Hollander v. American Cyanamid Co. that a three month period between the plaintiff's EEOC complaint and an adverse employment action was insufficient to show a retaliatory motive, because no other facts in the record supported a finding of retaliation. 895 F.2d at 85–86.

### 1. As to the Plaintiff Leo Smith's Retaliation Claim

Here, the parties agree that Leo Smith engaged in protected activity when he filed a complaint with the EEOC on June 22, 2007 complaining about the events of April 19, 2007 and the Sanitary District's response to them. Leo Smith alleges that the Sanitary District retaliated against him for this complaint approximately three and a half months later, on October 4, 2007, when he was stripped of driving privileges for two weeks, with full pay, for missing a mandatory safety meeting.

First, the Court finds that, based on the temporal proximity between his protected conduct and his suspension, as well as the evidence discussed below, Leo Smith can establish a prima facie case of retaliation. Consistent with this, the Court is satisfied that there are issues of fact as to whether Leo Smith's suspension was sufficiently harmful to him to be an adverse employment action.

With regard to the second step of the burden shifting test, the Sanitary District has a simple non-discriminatory reason for temporarily suspending Leo Smith: It was the Sanitary District's rule that failing to attend a safety meeting would result in a suspension of driving privileges until the following safety meeting. Leo Smith missed a meeting without providing a valid excuse, and he was therefore suspended.

Nevertheless, in assuming his final burden of persuasion, Leo Smith asserts that other individuals who had not complained, but were otherwise similarly situated, were treated differently from him when they missed safety meetings. However, despite presenting testimony stating in general terms that other drivers were treated more leniently than Leo Smith, (see, e.g., Puglisi Sr. Depo. at 95–98), the plaintiff primarily relies on the experience of a single driver, a Caucasian employee named Carl Geiger, to show that Leo Smith was

treated differently because of his complaint. Carl Geiger was absent from the same meeting that Leo Smith missed, but was not suspended. Rather, as the defendant Michael McDermott admits, McDermott asked Geiger if he had an excuse for missing the meeting, and declined to suspend him when he provided an excuse.

Ultimately, the Court finds that the fact that Geiger was not suspended raises a triable issue of fact as to whether Beyer was suspended in retaliation for his protected conduct. To be sure, Geiger was not scheduled to drive at that time of year, and the practical effect of a suspension on Geiger may have been limited. (See McDermott Depo. at 159:14–17 "Carl Geiger is way down the list. He drives maybe four or five times a year. That time of year, he wasn't even in the loop.") Nevertheless, the Court finds that there are triable issues of fact as to whether McDermott had a retaliatory motive in suspending Beyer for missing the October 4, 2007 safety meeting.

The Court notes that McDermott himself faces liability for the alleged retaliation under Section 1981, Section 1983, and the New York State Human Rights Law. Further, McDermott's role as a manager and policy maker could impute liability for retaliation to the Sanitary District under Section 1981, Section 1983, Title VII and the New York State Human Rights Law. However, as no other persons are implicated in the alleged retaliation against Leo Smith, the Court grants summary judgment dismissing all other claims based on this alleged retaliation.

### 2. As to the Plaintiff John Smith's Retaliation Claim

The plaintiff John Smith also asserts a retaliation claim against the defendants, based on protected activity he took on July 13, 2007 when he filed an EEOC complaint against the Sanitary District. The adverse employment action that he alleges the defendants took against

him in retaliation occurred eleven months later, when on June 24, 2008 he was suspended temporarily without pay after an incident along his trash collection route. There are doubtless genuine issues of fact as to what took place during the incident in question, but the Court ultimately finds that those issues of fact are not material, and that summary judgment is appropriate here.

Resolving all factual disputes in favor of John Smith for purposes of this motion, it would appear that, on June 24, 2008, John Smith emptied the garbage at 417 Woodland Road, South Hempstead, New York, and properly replaced the garbage cans at that residence by the side of the driveway. However, for whatever reason, the homeowner at that address was unsatisfied with John Smith's work, and, after shouting at Smith, he called Smith's supervisor, Nicholas Dionisio, to complain. Dionisio traveled to the resident's home himself, and also contacted John Smith to direct him to return with the garbage truck he was riding on to the resident's home. Upon arriving at the home, John Smith found the resident's garbage cans in the middle of his driveway. Without asking Smith for his side of the story, Dionisio instructed Smith to replace the cans by the side of the driveway. Meanwhile, the resident, who is a United States Customs agent and wears a gun, looked menacingly on with his hand on his weapon. Smith refused to comply with Dionisio's order, explaining that he had done the job properly the first time. Dionisio repeated the directive, and Smith again refused. Dionisio then suspended John Smith from work, and Michael McDermott upheld the suspension.

Even if the plaintiffs proved that this was the sequence of events on June 24, 2008, the Court finds that the plaintiffs cannot satisfy their burden of showing retaliation. First, the length of time between the protected activity and the alleged retaliation is nearly one year.

The plaintiffs provide no case law showing that such an attenuated temporal connection could support a retaliation claim. Moreover, even disregarding the lack of temporal connection here, the Court finds that the plaintiffs cannot support their burden of showing that the defendants' basis for suspending John Smith—insubordination—was pretextual. To the contrary, John Smith admits that he twice refused a directive by his manager to complete a routine task. There are certainly questions of fact as to whether Dionisio was fair to John Smith in directing him to move the garbage cans, but given Smith's subsequent refusal to comply with Dionisio's order, there is little evidence that the resulting suspension was pretext for retaliation. The defendants' motion for summary judgment dismissing John Smith's retaliation claims as against all defendants is therefore granted.

### 3.  As to the Plaintiff Benjamin Cannon's Retaliation Claim

The plaintiff Benjamin Cannon also asserts a retaliation claim against the defendants based on his filing of an EEOC complaint on July 7, 2007. The allegedly retaliatory conduct that Cannon complains of occurred more than a year after he filed his complaint, on or about August 12, 2008, when Cannon was denied reinstatement as a Sanitation District driver.

As discussed above, Cannon's commercial driver's license had been suspended sometime in May of 2007, based on a conviction for speeding and driving while intoxicated. In August 2008, after that suspension was lifted, Cannon petitioned to be reinstated as a driver with the Sanitary District. Although the Sanitary District managers appeared to originally go along with Cannon's request for reinstatement, they soon received a letter from the Sanitary District's insurance broker, recommending that, in light of Cannon's driving record—which also included hitting a vehicle while driving a garbage truck—Cannon should not be reinstated as a driver for another two years. While the Sanitary District managers

ultimately agreed to pay Cannon as if he were a driver, they declined to permit him to drive a Sanitary District garbage truck.

In the Court's view, the evidence adduced by the plaintiffs is insufficient to show retaliatory animus. First, the time between the protected conduct and the alleged retaliatory conduct, a period of thirteen months, is attenuated. Moreover, there has been no independent evidence presented showing that Cannon's denial of reinstatement was pretextual. To the contrary, the Sanitary District's insurance broker expressly recommended that Cannon not be permitted to drive for another two years. While the plaintiff attempts to marshal evidence demonstrating that the defendants procured the insurance broker's recommendation through devious means and for the purpose of retaliation, the Court finds that this evidence is entirely speculative. The Court therefore grants the defendants' motion for summary judgment dismissing Benjamin Cannon's retaliation claim as against all defendants.

**D. As to the Plaintiffs' Section 1985 Conspiracy Claim**

Finally, the Court addresses the plaintiffs' claim against all of the defendants for conspiracy to violate civil rights, pursuant to 42 U.S.C. § 1985. Section 1985(3) prohibits "two or more persons" from "consp [iring] ... for the purpose of depriving ... any person or class of persons of the equal protection of the laws, or of equal privileges and immunities under the laws...." 42 U.S.C. § 1985(3). Under this law, a successful plaintiff must prove (1) a conspiracy; (2) for the purpose of depriving a person or class of persons of the equal protection of the laws, or the equal privileges and immunities under the laws; (3) an overt act in furtherance of the conspiracy; and (4) an injury to the plaintiff's person or property, or a deprivation of a right or privilege of a citizen of the United States. See Thomas v. Roach, 165 F.3d 137, 146 (2d Cir. 1999).

Here, the Court finds that the plaintiffs' Section 1985 claim must fail. First, there is no evidence that the defendants *agreed* to violate the plaintiffs' civil rights. With regard first to John Beyer, all of the evidence shows that, whatever his role in the incident, he acted alone. Similarly, while the other individual defendants may have discussed the relevant events, there is no evidence that they actively agreed to violate the plaintiffs' rights.

Moreover, even if the plaintiffs were to establish an agreement among the individual defendants, the plaintiffs' conspiracy claim is barred by the intracorporate conspiracy doctrine. This doctrine provides that "officers, agents and employees of a single corporate entity are legally incapable of conspiring together while acting within the scope of their employment." Tardd v. Brookhaven Nat. Laboratory, 407 F. Supp. 2d 404, 414 (E.D.N.Y. 2006) (Spatt, J.) (internal quotations omitted). As all of the defendants were employees or board members of the Sanitary District, this doctrine thus bars the plaintiffs' conspiracy claim here. While there is an exception to this doctrine where the alleged conspirators are shown to be each acting with independent motives, see, e.g., Agugliaro v. Brooks Bros., Inc., 802 F. Supp. 956, 963 (S.D.N.Y. 1992), there is no such evidence in this case. The Court therefore grants the defendants' motion for summary judgment dismissing the plaintiff's Section 1985 conspiracy claim as against all defendants.

### III. CONCLUSION

For the foregoing reasons, it is hereby

**ORDERED** that the defendant John Beyer's motion for summary judgment is granted in its entirety, and all claims against John Beyer are dismissed; and it is further

**ORDERED** that the defendant Sanitary District's motion for summary judgment dismissing the plaintiff's hostile work environment claims against it pursuant to Title VII, Section 1981, Section 1983, and the New York Human Rights Law is denied; and it is further

**ORDERED** that the defendant Board of Commissioners' motion for summary judgment dismissing all of the plaintiffs' claims against them in their individual capacities is granted; and it is further

**ORDERED** that the defendants Robert Noble, Michael McDermott, and Nicholas Dionisio's motion for summary judgment dismissing the plaintiffs' hostile work environment claims against them in their personal capacities under Section 1981 and the New York Human Rights Law is denied; and it is further

**ORDERED** that the defendants' motion for summary judgment dismissing the plaintiffs' claims for retaliation against Benjamin Cannon and John Smith is granted; and it is further

**ORDERED** that the defendants' motion to dismiss the plaintiffs' claims based on retaliation against Leo Smith is denied with respect to Michael McDermott and the Sanitary District, and granted in all other respects; and it is further

**ORDERED** that the defendants' motion for summary judgment dismissing the plaintiffs' Section 1985 conspiracy claim as against all defendants is granted; and it is further

**ORDERED** that the parties are directed to appear before the Court on Monday, August 1, 2011 at 9:00 a.m. to set a date for trial; and it is further

[remainder of page intentionally left blank]

**ORDERED** that the Clerk of the Court is respectfully directed to amend the caption

in this case to read as follows:

**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF NEW YORK**
---------------------------------------------------------X
LEO SMITH, JR., BENJAMIN CANNON, JR.,
and JOHN CHRISTOPHER SMITH,

                     Plaintiffs,

                 -against-

TOWN OF HEMPSTEAD DEPARTMENT OF
SANITATION SANITARY DISTRICT NO. 2,
BOARD OF COMMISSIONERS in their official
capacities, ROBERT NOBLE in his individual
and official capacity, MICHAEL
MCDERMOTT in his individual and official
capacity, and NICHOLAS DIONISIO in his
individual and official capacity,

                   Defendants.
---------------------------------------------------------X


**SO ORDERED.**

Dated: Central Islip, New York
July 19, 2011

                           ___*/s/ Arthur D. Spatt*_____
                            ARTHUR D. SPATT
                      United States District Judge