**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF NEW YORK**
--------------------------------------------------------X
LEO SMITH, JR., BENJAMIN CANNON, JR.,
and JOHN CHRISTOPHER SMITH,

                    Plaintiffs,

              -against-

TOWN OF HEMPSTEAD DEPARTMENT OF
SANITATION SANITARY DISTRICT NO. 2,
BOARD OF COMMISSIONERS in their official
and individual capacities, ROBERT NOBLE in
his individual and official capacity, MICHAEL
MCDERMOTT in his individual and official
capacity, NICHOLAS DINICCIO in his
individual and official capacity,

                    Defendants.

--------------------------------------------------------X

**MEMORANDUM OF**
**DECISION AND ORDER**
08-cv-3546 (ADS)(WDW)

**APPEARANCES:**

**Law Offices of Frederick K. Brewington, Esq.**
*Attorneys for the Plaintiffs*
556 Peninsula Boulevard
Hempstead, NY 11550
        By:    Frederick K. Brewington, Esq.,
               Gregory Calliste, Jr., Esq., of Counsel

**Law Offices of Gregory S. Lisi, P.C.**
*Attorneys for all Defendants except John Beyer*
55 Front Street, Suite 7
Rockville Center, NY 11570
        By:    Gregory Scot Lisi, Esq., of Counsel

**Gabor & Gabor, Esqs.**
*Attorneys for the Defendant John Beyer*
400 Garden City Plaza
Suite 406
Garden City, NY 11530
        By:    David George Gabor, Esq.,
               Hope Senzer Gabor, Esq., of Counsel

**SPATT, District Judge.**

In this civil rights case, the Plaintiffs allege that the Defendants created a hostile work environment in the Plaintiffs' workplace, and then retaliated against the Plaintiffs for formally complaining about the presence of the hostile work environment. Jury selection is scheduled for December 16, 2013.

Previously, on December 23, 2010, the Defendant John Beyer, who is represented separately from the remainder of the defendants, filed a motion for summary judgment dismissing all of the Plaintiffs' claims against him. On December 24, 2010, the remaining Defendants moved for summary judgment dismissing all of the Plaintiffs' claims. Both motions were opposed.

On July 19, 2011, the Court granted Beyer's motion for summary judgment in full, and granted in part and denied in part the remaining Defendants' motion for summary judgment. Of relevance here, the Court denied that part of the remaining Defendants' motion for summary judgment dismissing the retaliation claims of the Plaintiff Leo Smith, Jr. against the Defendants Michael McDermott and the Town of Hempstead Department of Sanitation Sanitary District No. 2 (the "Sanitary District").

On November 7, 2013, the Defendants moved for partial reconsideration of that part of the order dated July 19, 2011 permitting the retaliation claims by Leo Smith against McDermott and the Sanitary District to proceed forward. According to the Defendants, the United States Supreme Court's decision in University of Tex. Sw. Med. Ctr. v. Nassar, 133 S. Ct. 2517 (2013) represents a change in controlling law. The Plaintiffs oppose the motion for partial reconsideration as untimely. For the reasons set forth, the Court denies the motion for partial reconsideration.

# I. BACKGROUND

This case, like another case pending before the Court, <u>Alexandre v. Town of Hempstead</u>, No. 09-cv-1269, 275 F.R.D. 94, 2011 WL 2181461 (E.D.N.Y. Jun. 4, 2011), stems from the April 19, 2007 hanging of a noose in the employee area of the "Sanitary District." Each of the three Plaintiffs, Leo Smith, Jr., Benjamin G. Cannon, Jr., and John Christopher Smith, was an employee of the Sanitary District as of April 19, 2007, and remains employed there today. All three are African-American. The Plaintiffs name as defendants in this case the Sanitary District; its Board of Commissioners; Robert Noble, secretary to the Board of Commissioners; Michael McDermott, the general manager for the Sanitary District; Nicholas Dionisio (identified incorrectly as Nicholas Diniccio in the plaintiffs' complaint), a mid-level supervisor at the Sanitary District; and originally John Beyer, a co-worker of the plaintiffs at the Sanitary District.

The following facts in this case are generally not disputed:

On Thursday, April 19, 2007 at about 6:00 a.m., the Plaintiffs Leo Smith and John Smith arrived for work at the central garage for the Sanitary District. When they entered the garage, they found a rope tied into a noose hanging on the wall in an area where workers regularly gathered. A number of other Sanitary District employees, both white and black, also witnessed the noose. The third named plaintiff, Benjamin Cannon, did not observe the noose himself, but heard about the event shortly thereafter. Also, at some time before or after the plaintiffs arrived, the defendant Nicholas Dionisio, a Caucasian mid-level supervisor, saw the noose, but neither reported it nor removed it.

Seeing the noose and feeling offended, the Plaintiff John Smith removed it from the wall, and brought it to a mid-level manager named John Pugliese, Sr. In turn, Pugliese

brought the noose to the defendant Michael McDermott, his superior at the Sanitary District. McDermott stored the noose under his desk, and proceeded to call a meeting of all personnel at the Sanitary District before they left the garage that morning on their garbage collection routes. At that meeting, McDermott told the workers, in substance, that the hanging of the noose might have been acceptable or funny ten years ago, but that it was not acceptable today. McDermott offered an opportunity for anyone to comment on the subject of the noose – an opportunity that was apparently declined – and he then dismissed the workers from the meeting. McDermott then contacted a number of other individuals, including the Defendant Robert Noble, to discuss the incident, and commenced an investigation into the morning's events. The Sanitary District workers, including the Plaintiffs, completed their normal duties that day, although the Plaintiffs state that they were very upset by both the noose and McDermott's comments.

The following Monday, which was April 23, 2007, the Defendant John Beyer came to meet with McDermott about 11:00 a.m. Beyer told McDermott that he had hung the noose in the work area, and that he had done so not to express racial animus, but rather as part of a joke with a co-worker about how the benefits that the Sanitary District workers received were insufficient. Significantly, Beyer also told McDermott, either at this meeting or at a subsequent meeting, that he had hung up the noose for only three to four minutes and then had taken it down, and that he believed that no African-American workers had seen the noose while it was hung.

On Tuesday, April 24, 2007, McDermott permitted Beyer to address all of the sanitation workers at a general meeting, at which time Beyer apologized to the group for his part in the hanging of the noose. He also later apologized to each of the Plaintiffs

individually. For his actions concerning the noose, Beyer received a verbal reprimand, and was told that he would have a written reprimand placed in his file indicating that any subsequent similar event would result in his termination. Whether the written reprimand was actually issued is in some dispute.

According to Beyer, he had found the noose in the rear of a garbage truck, and had thrown it back in a truck after hanging it on the wall. However, in spite of the fact that Beyer's statement may have led to the impression that someone else had re-hung the noose after Beyer removed it, it is not clear that substantial further investigation of the event took place. Thus, on May 3, 2007, the Plaintiffs wrote a letter to the defendant Robert Noble, the secretary to the Board of Commissioners, stating their disappointment with the Sanitary District's response to the incident. Based on the Plaintiffs' letter, Noble took over the investigation of the incident from McDermott, and also reprimanded McDermott for his statement that hanging a noose might have been acceptable ten years ago.

Noble's subsequent investigation into the incident lasted approximately another two months. However, few additional individuals in addition to the Plaintiffs and the managers involved were interviewed. As for the noose itself, McDermott had discarded it before any additional examination could be performed on it. Ultimately, no additional punishment was rendered to John Beyer, and no other individuals were implicated in the hanging of the noose. No further meetings of the Sanitary District workers were held concerning the incident, and no additional training was provided to the personnel.

On June 22, 2007, July 11, 2007, and July 13, 2007, Leo Smith, Benjamin Cannon, and John Smith each respectively filed a complaint with the New York State Division of Human Rights and the Equal Employment Opportunity Commission ("EEOC") concerning

the hanging of the noose and the response by the Sanitary District. Each of the three stated, in their own language, that the hanging of the noose was offensive, and that they felt that their employer had inadequately addressed the event. The EEOC ultimately issued Notices of Right to Sue regarding each of these three complaints.

Based on these basic facts, the Plaintiffs ultimately asserted various federal and state causes of action against the defendants, alleging that the defendants had created a hostile work environment. In addition, the Plaintiffs asserted retaliation claims against the defendants, based on a further set of facts:

Of importance here, the plaintiff Leo Smith alleges that the defendants retaliated against him approximately three and a half months after he filed his EEOC complaint by wrongfully suspending him from driving a garbage truck for two weeks. However, he was given full pay during the suspension. Leo Smith allegedly received this suspension for missing a mandatory safety meeting. During his two-week suspension he did not drive a garbage truck, but rather worked on the back of the truck, helping to load garbage at each residential stop. Leo Smith does not deny that it may be his employer's nominal policy to suspend drivers who miss safety meetings, but asserts that this policy was generally not enforced, and that it was enforced against him only because of his EEOC complaint.

On August 28, 2008, the Plaintiffs commenced the present action. After amending their complaint as of right on December 12, 2008, the Plaintiffs asserted causes of action against the Sanitary District and its Board of Commissioners for: (1) hostile work environment and retaliation in violation of Title VII, 42 U.S.C. § 2000e; (2) hostile work environment and retaliation in violation of the Fourteenth and First Amendments of the United States Constitution, pursuant to 42 U.S.C. § 1983; and (3) Monell liability with regard

to the municipal defendant pursuant to 42 U.S.C. § 1983. Against all of the defendants, the

Plaintiffs asserted causes of action for (1) hostile work environment in violation of 42 U.S.C.

§ 1981; (2) conspiracy to create a hostile work environment and to retaliate, pursuant to 42

U.S.C. § 1985; and (3) hostile work environment and retaliation, in violation of New York

State's Human Rights Law, New York State Executive Law § 296.

On December 23, 2010, Beyer filed a motion for summary judgment dismissing all of

the plaintiffs' claims against him. On December 24, 2010, the remaining defendants moved

for summary judgment dismissing all of the plaintiffs' claims. Both motions were opposed.

On July 19, 2011, as relevant here, the Court (1) granted Beyers' motion for summary

judgment in its entirety and dismissed all claims against him; (2) granted in part and denied

in part the remaining defendants' motion for summary judgment. In particular, the Court

allowed Leo Smith's retaliation against McDermott and the Sanitary District to proceed

forward, and dismissed Leo Smith's retaliation claims against the other Defendants.

With respect to Leo Smith's claims of retaliation, the Court noted "the parties'

agree[ment] that agree that Leo Smith engaged in protected activity when he filed a

complaint with the EEOC on June 22, 2007 complaining about the events of April 19, 2007

and the Sanitary District's response to them." (Memorandum & Order, at 22.) The Court

found that, as a matter of law, "based on the temporal proximity between his protected

conduct and his suspension, as well as the evidence discussed below, Leo Smith c[ould]

establish a prima facie case of retaliation." (Id.) The Court further determined that the

Sanitary District preferred "a simple non-discriminatory reason for temporarily suspending

Leo Smith" in that "[i]t was he Sanitary District's rule that failing to attend a safety meeting

would result in a suspension of driving privileges until the following safety meeting." (Id.)

Nevertheless, the Court pointed to evidence that other drivers were treated more leniently than Leo Smith was and thus concluded that "triable issues of fact [existed] as to whether McDermott had a retaliatory motive in suspending [Leo Smith] for missing the October 4, 2007 safety meeting." (Id.) at 23. "However, as no other persons [we]re implicated in the alleged retaliation against Leo Smith, the Court grant[ed] summary judgment dismissing all other claims based on this alleged retaliation." (Id.)

On November 7, 2013, more than two years after the summary judgment order, the Defendants moved for partial reconsideration of that portion of the order allowing Leo Smith's retaliation claims against McDermott and the Sanitary District to proceed forward. The Plaintiffs oppose the motion for partial reconsideration as untimely.

## II. DISCUSSION

A. Federal Rule of Civil Procedure 54(b)

"The Court has authority under Fed. R. Civ. P. 54(b), as well as the inherent power of the court, to reconsider a prior decision at any time before the entry of final judgment." Richman v. W.L. Gore & Assocs., 988 F. Supp. 753, 755 (S.D.N.Y. 1997). Federal Rule of Civil Procedure 54(b) provides, in relevant part, that "any order or other decision . . . that adjudicates fewer than all the claims or the rights and liabilities of fewer than all the parties does not end the action as to any of the claims or parties and may be revised at any time before the entry of a judgment adjudicating all the claims and all the parties' rights and responsibilities." Fed. R. Civ. P. 54(b). "The major grounds justifying reconsideration are an intervening change of controlling law, the availability of new evidence, or the need to correct a clear error or prevent manifest injustice." Virgin Atl. Airways, Ltd. v. Nat'l Mediation Bd.,

956 F.2d 1245, 1255 (2d Cir. 1992) (internal quotation marks omitted); accord In re Ski Train Fire, 224 F.R.D. 543, 548 (S.D.N.Y. 2004).

In this District, a motion to reargue, modify or vacate a prior decision must comply with Local Civil Rule 6.3, which "requires a party to submit a motion to reconsider a decision within ten days of the docketing of the Court's original determination, unless the movant presents a compelling reason to ignore the time limit." Richman, 988 F. Supp. at 755. The court retains "discretion to consider a motion for reargument notwithstanding the movant's failure to comply with Local Rule [6.3]'s requirements, but it will only exercise this discretion when justice so requires." Church of Scientology Int'l v. Time Warner, Inc., No. 92–CV–3024 (PKL), 1997 WL 538912, at *4, 1997 U.S. Dist. LEXIS 12839, at *13–14 (S.D.N.Y. Aug. 27, 1997). Justice requires the exercise of this discretion when, for example, there is an intervening change in controlling law, such as the issuance of a relevant United States Supreme Court decision. See Filler v. Hanvit Bank, No. 01–CV–9510 (MGC), 2003 WL 21729978, at *1, 2003 U.S. Dist. LEXIS 12836, at *2 (S.D.N.Y. July 23, 2003) (vacating prior orders where a recent United States Supreme Court decision altered the outcome); Richman, 988 F. Supp. at 755, 759 (modifying a prior opinion where the Supreme Court decision constituted an intervening change in the controlling law).

B. Legal Standard on a Motion for Summary Judgment

It is well-settled that summary judgment under Fed. R. Civ. P. 56(c) is proper only "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c). A fact is "material" within the meaning of Fed. R. Civ. P. 56 when its resolution "might affect the

outcome of the suit under the governing law." <u>Anderson v. Liberty Lobby, Inc.</u>, 477 U.S. 242, 248, 106 S. Ct. 2505, 91 L. Ed. 2d 202 (1986). An issue is "genuine" when "the evidence is such that a reasonable jury could return a verdict for the nonmoving party." <u>Id.</u> In determining whether an issue is genuine, "[t]he inferences to be drawn from the underlying affidavits, exhibits, interrogatory answers, and depositions must be viewed in the light most favorable to the party opposing the motion." <u>Cronin v. Aetna Life Ins. Co.</u>, 46 F.3d 196, 202 (2d Cir. 1995) (citing <u>United States v. Diebold, Inc.</u>, 369 U.S. 654, 655, 82 S. Ct. 993, 8 L. Ed. 2d 176 (1962) (per curiam), and <u>Ramseur v. Chase Manhattan Bank</u>, 865 F.2d 460, 465 (2d Cir. 1989)).

Once the moving party has met its burden, "the nonmoving party must come forward with 'specific facts showing that there is a genuine issue for trial.'" <u>Matsushita Elec. Indus. Co. v. Zenith Radio Corp.</u>, 475 U.S. 574, 587, 106 S. Ct. 1348, 89 L. Ed. 2d 538 (1986) (quoting Fed. R. Civ. P. 56(e)). However, the nonmoving party cannot survive summary judgment by casting mere "metaphysical doubt" upon the evidence produced by the moving party. <u>Matsushita</u>, 475 U.S. at 586. Summary judgment is appropriate when the moving party can show that "little or no evidence may be found in support of the nonmoving party's case." <u>Gallo v. Prudential Residential Servs.</u>, 22 F.3d 1219, 1223–24 (2d Cir. 1994) (citations omitted).

C. <u>As to Nassar</u>

In <u>Nassar</u>, the Supreme Court modified the standard for a plaintiff seeking to establish a retaliation claim under Title VII. In particular, the Supreme Court held that "Title VII retaliation claims must be proved according to traditional principles of but-for causation, not the lessened causation test stated in § 2000e–2(m)" of Title VII. 133 S. Ct. at 2533.

Prior to Nassar, Second Circuit case law held that a plaintiff may meet her burden of persuasion by "point[ing] to evidence that would be sufficient to permit a rational factfinder to conclude that the employer's explanation is merely a pretext for impermissible retaliation," Cifra v. Gen. Elec. Co., 252 F.3d 205, 216 (2d Cir. 2001) (internal quotation marks and citations omitted) by "com[ing] forward with evidence establishing that it is more likely than not the employer's decision was motivated, at least in part, by an intent to retaliate against him." El Sayed v. Hilton Hotels Corp., 627 F.3d 931, 932 (2d Cir. 2010).

Here, in accordance with pre-Nassar case law, the Court previously held that "triable issues of fact [existed] as to whether McDermott had a retaliatory motive in suspending [Leo Smith] for missing the October 4, 2007 safety meeting." In other words, the Court determined that Leo Smith need only prove that a retaliatory motive played a role in the temporary suspension rather than was a but-for cause of the adverse employment action as is now required by Nassar.

D.  Application of Nassar to this Case

The Defendants argues that, in light of Nassar, the Court should reconsider Leo Smith's retaliation claim. The Court agrees with the Defendants that reconsideration is appropriate given the clear shift in the law, as articulated by the Supreme Court, rendered after the summary judgment order in this case. However, the Court finds that, as a matter of law, the Plaintiff has established the existence of a triable issue of fact as to whether McDermott's retaliatory motive was a but-for cause of Leo Smith's temporary suspension.

Again, the Court has previously found that the Plaintiff has, for purposes of burden-shifting on summary judgment, adequately established a *prima facie* case of discrimination and that the Defendant has produced a legitimate non-retaliatory reason for the allegedly

adverse action. The question now is whether, applying the <u>Nassar</u> standard, a triable issue of fact exists so that the adverse employment action would not have occurred in the absence of a retaliatory motive.

The Defendants contend that the only possible connection between Leo Smith's complaint about discrimination and his temporary suspension is temporal proximity. It is true that "[w]hile temporal proximity [between the protected activity and the adverse action] alone may still be sufficient at the prima facie stage, it is not sufficient at the pretext stage." <u>Dall v. St. Catherine of Siena Med. Ctr.</u>, 11-CV-0444 (MKB), 2013 WL 4432354, at *22 n. 15 (E.D.N.Y. Aug. 14, 2013). However, the Defendants ignore Pugliesi's deposition testimony that other drivers were treated more leniently than Leo Smith. Therefore, the Court adheres to its previous determination "that the fact that [Carl] Geiger was not suspended raises a triable issue of fact as to whether [Leo Smith] was suspended in retaliation for his protected conduct."

In the Court's view, this apparent disparate treatment, coupled with the temporal proximity between the underlying complaint and employment adverse action, raises a triable issue of fact as to whether McDermott's retaliatory motive was a but-for cause of Leo Smith's temporary suspension. For this reason, even under the more defendant-friendly <u>Nassar</u> standard, the Court adheres to its prior determination denying the Defendants' motion for summary judgment dismissing Leo Smith's retaliation claims against McDermott and Sanitary District.

### III. CONCLUSION

For the foregoing reasons, the Defendants' motion for partial reconsideration is denied.

**SO ORDERED.**

Dated: Central Islip, New York
November 16, 2013

_Arthur D. Spatt_
ARTHUR D. SPATT
United States District Judge